Jason A. McNeill (9711)
 mcneill@mvmlegal.com
Kennedy D. Nate (14266)
 nate@mvmlegal.com
**McNeill | Von Maack**
175 South Main Street, Suite 1050
Salt Lake City, Utah 84111
Telephone: 801.823.6464

Attorneys for Plaintiff Thomas E. Katis

### IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **THOMAS E. KATIS, an individual**<br><br>    **Plaintiff,**<br>**v.**<br><br><br>**NCAP HOLDINGS, LLC, a Delaware limited liability company, and CHAMTECH TECHNOLOGIES, INC., a Delaware Corporation**<br><br>    **Defendants.** | **COMPLAINT AND JURY DEMAND**<br><br><br><br><br><br>**Case No.**<br><br>**Honorable Judge** _____ |

Plaintiff Thomas E. Katis ("Plaintiff" or "Mr. Katis") through his counsel McNeill Von Maack, alleges and complains against Defendants nCap Holdings, LLC ("nCap") and Chamtech Technologies, Inc. ("Chamtech Tech.") (collectively "Defendants") as follows:

### Nature of the Action

1. This is an action seeking a declaration by this Court that nCap and Chamtech Tech. are liable for the existing Judgment Plaintiff has against Chamtech Enterprises, Inc. ("Chamtech").

## Parties

2. Plaintiff is a resident of the State of Wyoming.

3. Defendant nCap Holdings, LLC is a Delaware limited liability company with its principal place of business is located at 345 West 600 South, Suite 175, Heber City, UT 84032.

4. Defendant Chamtech Technologies, Inc. is a Delaware corporation who conducted or conducts business in the State of Utah with its principal place of business is located at 345 West 600 South, Suite 175, Heber City, UT 84032.

## Jurisdiction and Venue

5. The Court has subject matter jurisdiction of the claims asserted herein pursuant to 28 U.S.C. § 1332, as the Plaintiff is a citizen of a different state than Defendants and Plaintiff seeks judgment against Defendants in an amount of no less than $2,063,548.26.

6. The Court has personal jurisdiction over Defendants because Defendants conduct business in Utah, have assets in Utah, have directed their harm and breached their obligations in Utah, and have their principal place of business located in Utah.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because Defendants' contacts with Utah are sufficient to create personal jurisdiction over Defendants in Utah and because a substantial part of the events giving rise to the claims in this action occurred within this District.

## General Allegations

### Chamtech and Mr. Katis

8. Beginning on March 17, 2011 and ending on October 27, 2011, Mr. Katis entered into four separate Convertible Promissory Notes (the "Notes") with Chamtech.

9. On March 17, 2011, Mr. Katis loaned Chamtech $300,000, which loan was secured by the Convertible Promissory Note of Chamtech Enterprises, Inc. Dated March 17, 2011 (the "First Note").

10. The First Note originally had a maturity date of March 17, 2012.

11. On March 14, 2012, Chamtech passed a Unanimous Written Consent in Lieu of a Meeting of the Board of Directors that extended the maturity date of the First Note to September 17, 2012.

12. On June 14, 2012, Chamtech passed a Unanimous Written Consent in Lieu of a Meeting of the Board of Directors that extended the maturity date of the First Note to October 27, 2012.

13. On June 17, 2011, Mr. Katis loaned Chamtech $200,000, which loan was secured by the Convertible Promissory Note of Chamtech Enterprises, Inc. Dated June 17, 2011 (the "Second Note").

14. The Second Note originally had a maturity date of June 17, 2012.

15. On June 14, 2012, Chamtech passed a Unanimous Written Consent in Lieu of a Meeting of the Board of Directors that extended the maturity date of the Second Note to October 7, 2012.

16. On August 11, 2011, Mr. Katis loaned Chamtech $300,000, which loan was secured by the Convertible Promissory Note of Chamtech Enterprises, Inc. Dated August 11, 2011 (the "Third Note").

17. The Third Note had a maturity date of August 11, 2012.

18. On June 14, 2012, Chamtech passed a Unanimous Written Consent in Lieu of a Meeting of the Board of Directors that extended the maturity date of the Third Note to October 7, 2012.

19. On October 27, 2011, Mr. Katis loaned Chamtech $500,000, which loan was secured by the Convertible Promissory Note of Chamtech Enterprises, Inc. Dated March 17, 2011 (the "Fourth Note").

20. The Fourth Note had a maturity date of October 27, 2012.

21. In total, Mr. Katis loaned Chamtech $1,300,000.

22. Mr. Katis did not receive payment from Chamtech on the Notes on or before October 27, 2012.

23. To date, Chamtech has failed to pay Mr. Katis the amounts owed under the Notes

### Judgment Against Chamtech

24. On June 19, 2013, Mr. Katis filed suit against Chamtech based on its breach of the Notes.

25. On January 12, 2015, Mr. Katis obtained judgment in the amount of $1,633,282.29 (the "Judgment") against Chamtech.  A copy of the Judgment is attached as Exhibit "1".

26. Chamtech owes an additional $460,731.81 in interest, bringing the total amount of the Judgment to no less than $2,063,548.26 plus ongoing interest accruing thereon.

### Chamtech Technologies

27. Sometime in or about 2012, the principal of Chamtech, Anthony Sutera ("Sutera") set up a new entity called Chamtech Technologies, Inc. ("Chamtech Tech.").

28. At some point thereafter, Chamtech transferred all of its assets to Chamtech Tech.

29. Chamtech and Chamtech Tech. went on to use the same assets, office space, files, file storage, and computers.

30. Chamtech and Chamtech Tech. used the same key personnel.

31. Chamtech had no company assets that were not shared with Chamtech Tech.

32. The officers and directors of both Chamtech and Chamtech Tech. were the same.

33. Chamtech Tech. was or became the "parent company" of Chamtech, with Chamtech being wholly owned by Chamtech Tech.

34. Such transaction amounted to a consolidation or merger of the two companies.

35. Upon information and belief, once Chamtech Tech. was created, Chamtech Tech. paid the salaries of Chamtech's directors and employees.

36. Chamtech and Chamtech Tech. were essentially the same company.

37. Upon information and belief, Chamtech Tech. expressly or implicitly agreed to assume the debts of Chamtech.

38. Chamtech Tech. was a continuation of Chamtech.

39. Chamtech Tech. and Chamtech created such a unity of interest and ownership that the separate personalities of the companies no longer existed; they became alter egos of each other.

40. Moreover, the transactions that moved all of the assets of Chamtech to Chamtech Tech. was done fraudulently to escape liability to those it owed debt to, including Mr. Katis.

41. Based on the foregoing, Chamtech was a mere instrumentality of Chamtech Tech. and recognition of Chamtech Tech. as a separate corporate entity would result in injustice.

42. Because Chamtech Tech. is Chamtech's alter ego, and its successor in interest, it is also liable for the Judgment entered in favor of Mr. Katis.

43. Chamtech and Chamtech Tech. shall hereinafter be called "Chamtech."

## Chamtech Becomes nCap

44. While the above lawsuit was pending, Sutera received tax advice that Chamtech should be converted from a corporation into a limited liability company.

45. On or around November 8, 2013, nCap was created.

46. The ownership in nCap mirrors the ownership of Chamtech such that the owners of Chamtech are the same owners in nCap and own the same percentages in nCap as they had owned in Chamtech.

47. The conversion from Chamtech to nCap was nothing more than a restructuring of the business.

48. nCap has and uses the same assets, personnel, and ownership of Chamtech.

49. nCap is nothing more than a continuation of Chamtech.

50. As a continuation of Chamtech, nCap is liable for Chamtech's debts, including the Judgment entered in favor of Mr. Katis.

## Demand for Payment

51. Mr. Katis, through counsel, demanded payment of the Judgment from Defendants.

52. Defendants refuse to acknowledge their liability for the Judgment, and refuse to pay such Judgment. This action results.

## FIRST CLAIM FOR RELIEF
### (Declaratory Judgment)

53. Mr. Katis hereby incorporates by reference the allegations contained in the above paragraphs.

54. The Court, pursuant to the Declaratory Judgment Act, 28 U.S.C.S. § 2201, has the power to issue declaratory judgments determining rights, status, and other legal relations within its respective jurisdiction, the declaration may be either affirmative or negative in form and effect, and shall have the force and effect of a final judgment or decree.

55. An actual dispute and controversy has arisen between Mr. Katis and Defendants based on Mr. Katis' contention that Defendants are alter egos and/or successors of Chamtech who are each liable to Mr. Katis for the Judgment amount, and Defendants' denial of such contention and ongoing refusal to assume liability for the Judgment or to pay such Judgment amount.

56. Mr. Katis is entitled to judicial relief to resolve the uncertainty and controversy created by the dispute between him and Defendants.

57. Mr. Katis is entitled to seek from the Court at least a declaration, and related declarations as necessary, to vindicate his rights and resolve the actual dispute and controversy between the parties that Chamtech Tech. and nCap are alter egos and/or successors who are liable to Mr. Katis for the Judgment entered against Chamtech.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the Court enter judgment against Defendants as follows:

1. Judgment in favor of Plaintiff and against Defendants on all of Plaintiff's causes of action;

2. Interest, costs, and attorney fees as may be allowed by law; and

3. For such other and further relief as the Court deems just and equitable under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all matters herein so triable.

DATED this 5th day of August, 2019.

MCNEILL | VON MAACK

_____
Jason A. McNeill
Kennedy D. Nate
*Attorneys for Plaintiff Thomas E. Katis*